## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EVELYN MARTIN, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-1316 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | Judge Nora Barry Fischer |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

### I. INTRODUCTION

Plaintiff Evelyn Martin ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, respectively. The parties have filed cross motions for summary judgment pursuant to Federal Rule of Civil Procedure 56, and the record has been developed at the administrative level. For the following reasons, the decision of the Administrative Law Judge is affirmed.

### II. PROCEDURAL HISTORY

Plaintiff protectively filed her application for DIB and SSI on July 14, 2004, alleging disability as of July 1, 2004. (R. at 336). The reconsideration step of the administrative review was eliminated and the case was escalated to the hearing level. (R. at 32, 327). On October 18, 2006, a hearing was held before an Administrative Law Judge ("ALJ"). (R. at 332). Plaintiff, who was represented by counsel, appeared and testified at the hearing. *Id.* Karen Krull, a vocational expert,

1

also testified. (R. at 361). On October 27, 2007, the ALJ issued a decision in which he determined that Plaintiff was not disabled within the meaning of the Act. (R. at 23). The Appeals Council subsequently denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner in this case. (R. at 4-7). Plaintiff now seeks review of that decision by this court.

### III. STANDARD OF REVIEW

This Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a de novo review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside, even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents [her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Sec'y of Health and Human Servs.*, 841

F.2d 57, 59 (3d Cir. 1988); 42 U.S.C. § 423(d)(1). A claimant is considered unable to engage in substantial gainful activity "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

An ALJ must do more than simply state factual conclusions to support his ultimate findings. *Baerga v. Richardson,* 500 F.2d 309, 312-13 (3d Cir 1974). The ALJ must make specific findings of fact. *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir. 1983). Moreover, the ALJ must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its rule making authority under 42 U.S.C. § 405(a), has promulgated a five-step sequential evaluation process to determine whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." [20 C.F.R.] §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. [20 C.F.R.] §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and

final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. [20 C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (footnotes omitted).

If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given plaintiff's mental or physical limitations, age, education, and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Campbell*, 461 U.S. at 461; *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d 775, 777 (3d Cir. 1987); *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

## IV. FACTS

### A. General Background

Plaintiff was born on May 6, 1957, making her forty-nine years old, 191 days short of her fiftieth birthday, at the time of the ALJ's decision. (R. at 12, 336). A 49 year old is considered a "younger person" under 20 C.F.R. § 404.1563(c). Plaintiff has a twelfth-grade education. (R. at 103). She last worked on a full time basis as an office manager, (R. at 340, 342-43), but left that job on December 11, 2003, (R. at 99). She had previously worked as a copy clerk, a collator and a short order cook. (R. at 99-100, 362). Finally, at the time of the ALJ's decision, Plaintiff was employed as a telephone operator, working twelve or fewer hours a week. (R. at 356-57). Plaintiff avers July 1, 2004 as the onset date of her disability. (R. at 335-36).

### B. Medical Background

Plaintiff claims to be disabled due to a number of medical conditions. On March 16, 1999, Plaintiff fell while cleaning a hot tub in the course of employment at Radisson Hotels, causing her to twist her knee and experience pain and swelling. (R. at 159). After the fall, Plaintiff visited her

4

primary care physician, Dr. Randy Stigliano. (R. at 160). The Radisson then referred her to Corporate Health Services where she saw Dr. Bill Trachtman. *Id.* Dr. Trachtman ordered an MRI which was performed on April 14, 1999 and was negative. *Id.* Dr. Trachtman referred Plaintiff to Dr. Ernest Swanson, (R. at 159), who believed the MRI was a false negative, (R. at 161).

Dr. Swanson performed the first of two arthroscopies on Plaintiff's left knee on May 4, 1999. (R. at 162). The surgery went without complication and the Plaintiff was taken to the recovery room in "satisfactory condition." *Id.* Plaintiff continued to feel pain in her knee after the surgery and a second arthroscopy was performed on January 26, 2000. (R. at 150). The Plaintiff was, again, taken to the recovery room in "satisfactory condition." *Id.*

Following the second arthroscopy, Plaintiff was treated by Dr. Daniel R. Yanicko, Jr. (R. at 143). Plaintiff complained to Dr. Yanicko of pain and declining function in her left knee. *Id.* Dr. Yanicko reported that Plaintiff may need a total knee replacement. (R. at 141).

Dr. Stigliano referred Plaintiff to Dr. David A. Tonnies in 2003. (R. at 270). On May 12, 2003, Dr. Tonnies evaluated Plaintiff and released her to her "full-time duty job," (R. at 275-76), as an office manager, (R. at 99). Dr. Tonnies stated that the Plaintiff "has no restrictions at this time." *Id.*

From June 23, 2003 to September 10, 2003, Plaintiff had a series of imaging scans to examine her left knee. (R. at 180-81). The images showed possible chondromalacia[1] and

---

[1] Chondromalacia is an abnormal softening of cartilage (gristle) anywhere in the body. Matthew Bender & Company, Inc., 2-CH Attorneys' Dictionary of Medicine 1178 (LexisNexis 2005).

5

osteopenia.[2] *Id.* On July 14, 2004, Dr. Stigliano's notes state that Plaintiff "needs [a] new knee." (R. at 192).

On November 9, 2004, Dr. J. H. Kim examined Plaintiff for a Bureau of Disability Determination examination. (R. at 207). The examination revealed an abnormal range of motion in Plaintiff's knees as well as severe tenderness at the medial knee joint on the left side. (R. at 209). Dr. Kim's impressions were degenerative joint disease of the left knee and chondromalacia of the left knee. *Id.* Dr. Kim also acknowledged Plaintiff's history of diabetes, mitral valve prolapse and hypertension. *Id.*

Plaintiff later had two scans of her lumbar spine to determine the cause of her back pain. On February 19, 2005, an image was taken of Plaintiff's lumbar spine due to a complaint of back pain. (R. at 257). The image showed that Plaintiff had a normal lumbosacral spine. *Id.* A later scan of Plaintiff's lumbar spine conducted on May 17, 2005 revealed "mild left paracentral disk protrusion" at the L5-S1 level and "minimal contact with the left S1 nerve root." (R. at 254).

### C.     **Administrative Hearing**

At the hearing, Plaintiff appeared with the assistance of counsel, Pamela Miller, Esquire. (R. at 332). Plaintiff testified that she suffered from pain in her left leg and in her back. (R. at 338). She claimed her back pain was caused by a bulging disc. *Id.* She testified that when she sat her right leg would go numb and she would have to stand to restore feeling to her leg. *Id.* Plaintiff also testified that she suffered from diabetes and high blood pressure. (R. at 339-40). Her diabetes was controlled through her diet. *Id.* Plaintiff also claimed to suffer from mitral valve prolapse and from asthma that

---

[2] Osteopenia is a condition marked by a deficiency of bone; the presence of less than the normal amount of bone. Matthew Bender & Company, Inc., 4-O Attorneys' Dictionary of Medicine 2665 (LexisNexis 2005).

was triggered by allergies to dust, paint or "any kind of a chemical smell." *Id.*

Plaintiff's medical conditions caused her pain on the inside of her knee and in her lower back. (R. at 350). She rated her pain as a ten on a scale from one to ten and stated that it was constant. (R. at 351). With Ibuprofen she rated her pain as a seven, but she testified that the medication makes her "go to sleep." *Id.* Plaintiff testified that the pain was worse when sitting or standing. *Id.* Also, extreme cold exacerbates the pain and triggers her asthma. (R. at 350).

Plaintiff also testified about her previous work. (R. at 342-43). Her last full time job was in 2003 as an office manager. *Id.* Plaintiff testified that she had to leave that job because back pain and complications with her leg caused her to have to stand and move, which she did "constantly at work." *Id.* Plaintiff also testified that she had previously worked as a copy clerk, a collator and a cook. (R. at 344).

Following Plaintiff's testimony, the ALJ heard testimony from a vocational expert, Karen Krull. (R. at 361). The ALJ proceeded to describe a hypothetical person and ask the vocational expert what work that person could perform. (R. at 363). The ALJ described someone of Plaintiff's age and educational background who could perform light work with the further limitations that she could lift and carry no more than twenty pounds; she could not push or pull with her lower extremities; she could kneel, crawl bend, squat, balance, climb and walk on occasion; she could not be exposed to extreme cold; she could not be exposed to dust, chemicals, fumes and gases; she must walk with the assistance of a cane; and she could not be exposed to heights. *Id.* The vocational expert testified that the hypothetical person could do the job of a phone operator, an alarm monitor, a receptionist or an information clerk, all of which are at the sedentary level.[3] *Id.* The vocational

---

[3]

20 C.F.R. § 404.1567(a) provides: "Sedentary work involved lifting no more than 10 pounds

expert further testified that these jobs exist in significant numbers in the national economy. *Id.* The vocational expert declined to list any light extertional work[4] because of the limitation of using the cane. *Id.*

## V.  DISCUSSION

The ALJ concluded that the Plaintiff was not disabled under §§ 216(I), 223(d) and 1614(a)(3)(A) of the Social Security Act. The ALJ reached this decision after applying the five step framework for analysis summarized in *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003).

### A.  The Five Step Analysis

Under the first step, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 11, 2003, (R. at 17), well before the onset date of July 1, 2004, (R. at 335-36). The ALJ acknowledged Plaintiff was employed part time as a phone operator at the time of the hearing, but found that this employment had not risen to the level of substantial gainful activity. (R. at 17).

At Step two, the ALJ determined that Plaintiff suffered from a severe impairment under the

---

at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." *See,* 20 C.F.R. § 416.967(a) (identical).

[4]

20 C.F.R. § 404.1567(b) provides: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job in this category requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." *See,* 20 C.F.R. § 416.967(b) (identical).

standard set forth in 20 C.F.R. §§ 404.1520(c) and 416.920(c). (R. at 18). The ALJ recognized that Plaintiff suffered from degenerative joint disease of the left knee, chronic low back pain associated with a bulging disc, high blood pressure, obesity, diabetes and asthma, noting that these impairments impose more that minimal restrictions on the Plaintiff's ability to carry out basic work-related functions. (R. at 17-18).

In the third step, the ALJ determined that none of Plaintiff's medical impairments met or equaled any impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listing of Impairments"). (R. at 18). The ALJ also noted that "no physician or caregiver in the record has assessed that [Plaintiff's] conditions meet or equal the listings." *Id.*

Next, the ALJ determined that the Plaintiff's current residual capacity did not allow her to return to her past relevant work. (R. at 21-22). Accordingly, at step four the ALJ made the following residual capacity assessment:

> [Plaintiff] has the residual functional capacity to perform work involving lifting and carrying up to 20 pounds occasionally, and not involving more than limited pushing and pulling with the lower extremities, or more than occasional kneeling, crawling, bending, squatting, balancing, climbing, and walking or exposure to extreme cold, dust, chemicals fumes, gases, and height, or jobs which would not allow her to walk without the assistance of a cane.

(R. at 19). The ALJ further found that Plaintiff's medically determinable impairments could produce the symptoms claimed by Plaintiff but that Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely credible. *Id.* Although the vocational expert testified that Plaintiff is capable of performing her present job as a telephone operator, the ALJ precluded it from consideration as past relevant work because Plaintiff started this job after her onset date and the work had never risen to the level of substantial gainful activity. (R.

9

at 21).

Finally, under step five, the ALJ determined that there were jobs existing in significant numbers in the national economy that Plaintiff could have performed. (R. at 22). In making this determination, the ALJ uses the assistance of the Medical-Vocational Guidelines (hereinafter, "Grids"), 20 C.F.R. Pt. 404, Subpt. P, App. 2. *Id.* The ALJ explained that if Plaintiff had the capacity to perform the full range of light or sedentary work, a finding of not disabled would be directed under the Grids, Rules 201.21 and 202.21. *Id.* Rules 201.21 and 202.21 apply to individuals between forty-five and forty-nine years of age who are at least high school graduates, who do not have transferable skills, and who are able to do the full range of sedentary or light work, respectively. *Id.* Because Plaintiff's impairments prevented her from doing the full range of sedentary jobs, the ALJ asked the vocational expert to name some jobs which Plaintiff could perform. *Id.* The ALJ noted that the vocational expert listed the jobs of phone operator, alarm monitor, receptionist and information clerk. *Id.* Accordingly, the ALJ found that a listing of "not disabled" was appropriate. (R. at 23).

### B.     Issue Before This Court

Accordingly, the sole issue before this Court is whether, in step five of the analysis, the ALJ erred by applying the Grids "mechanically" because he failed to determine that Plaintiff was in a "borderline situation" and that Plaintiff was more appropriately classified as a "person closely approaching advanced age" under 20 C.F.R. § 404.1563(d). Plaintiff argues that 191 days constitutes a borderline situation and that she should be categorized as a "person closely approaching advanced age." (Pltf.'s Brief 9). Also, Plaintiff argues that applying the higher age category would place her in the Grids under Rule 201.14 which directs a finding of disabled. *Id.* at 7. To the

contrary, Defendant argues that the Plaintiff was not in a borderline situation and therefore, the ALJ did not need to consider whether Plaintiff was more appropriately classified as a "person closely approaching advanced age." (Def.'s Brief 8).

Section 404.1563(b) provides, in pertinent part:

> [w]e will use each of the age categories that applies to you during the period for which we must determine if you are disabled. We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

If the ALJ does not properly apply § 404.1563(b), and if proper application of that regulation could change ALJ's determination, the matter must be remanded for further consideration. *Kane v. Heckler*, 776 F.2d 1130, 1134 (3d Cir. 1985).

### C. Borderline Situation

The ALJ must engage in a two part inquiry when confronted with a possible borderline situation. *Kane*, 776 F.2d at 1134; Soc. Sec. Adm. "Hearings, Appeals, and Litigation Law Manual" (Hallex), II-5-3-2 (2001) (hereinafter, "Hallex"); *see generally, Bordes v. Comm'r of Soc. Sec.*, 235 Fed. Appx. 853, 859 n.7 (explaining the purpose and creation of the Hallex). First, the ALJ must determine whether the 191 day period between the date of the decision and the claimant's next birthday is "within a few days to a few months of reaching an older age category." Hallex, II-5-3-2. Second, the ALJ must determine whether using the higher age category would result in a decision of "disabled" instead of "not disabled." *Id.*

The United States Court of Appeals for the Third Circuit has addressed the issue of what constitutes a borderline situation. *Kane*, 776 F.2d 1130; *see also*, *Lucas v. Barnhart*, 184 Fed.Appx.

11

204, 207 (3d Cir. 2006) (non-precedential). In *Kane*, the Court of Appeals held that forty-eight days before a man's fiftieth birthday was a borderline situation. *Id.* The Court of Appeals elaborated:

> [t]he plain meaning of § 404.1563(a)[5] is that where the claimant's age falls within . . . a few months of the starting date of an age category the grids should not be employed mechanically. There is an assumption inherent in the grids that persons within those categories have certain capabilities, but in a borderline situation this assumption becomes unreliable.

*Id.* Similarly, in *Lucas*, the Court of Appeals held that 106 days before the claimant's fiftieth birthday was a borderline situation, 184 Fed.Appx. at 205-06. The Court of Appeals explained "[w]here an individual's circumstances are not adequately described by the Grid's attributes of residual functional capacity . . . the SSA must decide the case on the basis of the principles and definitions in the regulations, giving consideration to the rules for specific case situations." *Id.* at 206. The Court of Appeals remanded the case to the ALJ for further consideration after finding that, "[b]ecause the record does not contain factual findings relevant to the § 404.1563(b) inquiry into whether [plaintiff] was entitled to consideration . . . as a borderline age case, we conclude that the SSA's decision . . . is unsupported by substantial evidence." *Id.* at 208. *Kane* and *Lucas* each present a case where the claimant was less than six months from reaching the next age category.

However, the Third Circuit precedent merely offers instruction on what an ALJ must consider in a borderline situation, but fails to establish how the Court should calculate the extent of

---

[5] Present § 404.1563(b) is textually similar to the previous § 404.1563(a) of 1985 which provided in pertinent part: "We explain in detail how we consider your age as a vocational factor in Appendix 2. However, we will not apply these age categories mechanically in a borderline situation." The Third Circuit has continued to cite *Kane*, 776 F.2d 1130, when interpreting § 404.1563(b). *See for example*, *Lucas*, 184 Fed.Appx. at 206 (applying the holding in *Kane* to interpret § 404.1563(b)).

a borderline situation. *Kane*, 776 F.2d at 1134; *Lucas*, 184 Fed.Appx. at 207. At the very least, within forty-eight days of a claimant's 55th birthday is a borderline situation. *Kane*, 776 F.2d at 1133. Even the lengthier period within 106 days of a claimant's 55th birthday creates a borderline situation. *Lucas*, 184 Fed.Appx. at 207. However, the present case was not a forty-eight or even a 106 day period. It was a 191 day period, (R. at 336), almost four times as long as the period in *Kane*, 776 F.2d at 1133, and just a few weeks short of doubling the period in *Lucas*, 184 Fed.Appx. at 205-06. While *Kane* and *Lucas* instruct the ALJ to consider whether a claimant in a borderline situation is more appropriately classified in a higher age category, they do not explicitly state that 191 days, or any length of time over 106 days, is a borderline situation.

Helpfully, two district court cases within the Third Circuit offer guidance as to the outer limit of what constitutes a borderline situation, suggesting that a borderline situation begins somewhere between nine and eleven months. In *Rosado v. Bowen*, No. 85-5581, 1986 U.S. Dist. Lexis 15885 at *11 (E.D. Pa. Dec. 30, 1986), the claimant was "9 months shy of her 50th birthday." The district court held that the ALJ improperly applied the age categories in a mechanical manner. *Id.* Because the assumptions underlying the Grids become unreliable in borderline cases, the court remanded the case for the ALJ to consider "the age category applicable in the claimant's case with respect to her specific situation at the time of her initial hearing." *Id.* Also, in *Perkins v. Heckler*, No. 85-3907, 1986 U.S. Dist. Lexis 18902 at *5 (E.D. Pa. Oct. 20, 1986), the district court held that "[e]leven months is *not* within a few months." The claimant's onset of disability was over eleven months from his fiftieth birthday, when he would have become classified as "a person of advanced age." *Id.*; *see,* 20 C.F.R. § 404.1563(e). This leaves the impression that a borderline situation exists at least as far as nine months from the claimant's birthday, and conceivably an amount of time under

13

eleven months. *Rosado*, 1986 U.S. Dist. Lexis 15885 at *11; *Perkins*, 1986 U.S. Dist. Lexis 18902 at *5.

Since the decision in *Rosado,* the SSA has published the Hallex, which interprets § 404.1563(b) and provides that the proper way for an ALJ to determine whether a borderline situation exists is to first determine whether the claimant is within a few days or months of the next higher age category. Hallex, II-5-3-2; *see generally, Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor v. Mangifest*, 826 F.2d 1318, 1323 (3d Cir. 1987) (noting that courts must defer to an agency's consistent interpretation of its own regulation unless it is plainly erroneous or inconsistent with the regulation). According to the Hallex, the ALJ turns to the question of whether the higher age category would affect the determination of disability only after determining whether a claimant is within a few days or months of the next higher age category. *Id.* This approach comports with the Third Circuit Court of Appeals' analysis in *Lucas* for determining when a borderline situation exists. *See, Lucas*,184 Fed.Appx. at 207 (explaining that the ALJ must first determine if the claimant is "within a few days to a few months of reaching an older age category). Conversely, the court in *Rosado* first noted that a higher age category would have placed the claimant in the Grids under a rule that directs a finding of disabled, then used that fact to determine that the plaintiff was in a borderline situation. 1986 U.S. Dist. Lexis 15885 at *11. Therefore, more persuasive precedent than *Rosado* exists in the Ninth and Tenth Circuits.

Decisions by the Court of Appeals in other circuits offer a different theory of when a borderline situation begins. In *Lambert v. Chater*, 96 F.3d 469, 470 (10th Cir. 1996), the United States Court of Appeals for the Tenth Circuit held that seven months was not a borderline situation. Similarly, in *Russell v. Bowen*, 856 F.2d 81, 84 (9th Cir. 1988), the United States Court of Appeals

for the Ninth Circuit similarly ruled that a claimant who was seven months away from his sixtieth birthday was not in a borderline situation. This suggests that seven months, and therefore any length of time beyond seven months, is not a borderline situation. *Lambert v. Chater*, 96 F.3d 469, 470 (10th Cir. 1996); *Russell v. Bowen*, 856 F.2d 81, 84 (9th Cir. 1988).

The explanation for adopting a line somewhere below seven months in *Russell* is persuasive, and is easily applied to a 191 day period. While 191 days is less than seven full months, it is only a few days short. Like in *Russell*, 856 F.2d at 84, where the Ninth Circuit found that the claimant was closer to fifty-nine than sixty, Plaintiff in the instant case was closer to forty-nine than fifty, (R. at 336). The Court of Appeals recognized that "[l]ine drawing is reasonable and in accordance with the express language and purpose of these regulations. . . . Lines must be drawn at some point, otherwise there would be no efficient way to utilize the grid system." *Russell*, 856 F.2d at 84. A line must also be drawn in the present case.

In this Court's estimation, the line is appropriately drawn somewhere inside a 191 day period. What constitutes a borderline situation cannot extend indefinitely into the lower age group, or else it would defy "[t]he plain meaning of § 404.1563[b] that where the claimant's age falls within . . . a *few months* of the starting date of an age category the grids should not be employed mechanically." *Kane*, 776 F.2d at 1133 (emphasis added). A "few months" does not imply the greater part of a year.

Accordingly, the Court finds that ALJ did not err in considering plaintiff as a "younger person" pursuant to 20 C.F.R. § 404.1563(c), because 191 days is not "within a few days to a few months of reaching an older age category" under 20 C.F.R. § 404.1563(b), and therefore, is not a borderline situation. Under step one of the two part inquiry, the ALJ only had to determine if

plaintiff was within a few days or months of the next age category. *Lucas*, 184 Fed.Appx. at 207; Soc. Sec. Adm. "Hearings, Appeals, and Litigation Law Manual" (Hallex), II-5-3-2 (2001). The Hallex instructs the ALJ that "[i]f the answer to one or both [of the inquiries] is 'no,' a borderline age situation either does not exist or would not affect the outcome. The adjudicator will then use the claimant's chronological age." Hallex, II-5-3-2. The answer to the first inquiry, whether there were only a few days or months before the Plaintiff reached the next age category, is no. Therefore, in this Court's estimation, the ALJ had no need to continue the inquiry and properly used the Plaintiff's chronological age.

### D. Person Closely Approaching Advanced Age

If the ALJ finds that the claimant's case is a borderline situation and that using the higher age category would result in the claimant being qualified as disabled, the ALJ must then determine whether the claimant's ability to adjust to a new job was more like that of a "younger individual" or a "person closely approaching advanced age." *Id.*; *Kane*, 776 F.2d at 1134; *see also*, *Lucas*, 184 Fed.Appx. 204 (holding, in a borderline situation, that the ALJ must consider if the claimant's ability to adjust to a new job is more like that of someone in a higher age category). If the claimant is not within a few days or months of a higher age category, or if a higher age categorization would not affect the disability determination, there is no need for the ALJ to determine if the claimant should be classified in a higher age category. *Kane*, 776 F.2d at 1134.

Accordingly the Court finds that there was no need for the ALJ to determine if Plaintiff was more appropriately classified as "an individual closely approaching advanced age" pursuant to 20 C.F.R. § 404.1563(d), because Plaintiff was within a few days or months of the next higher age category.

16

## VI. CONCLUSION

The ALJ did not err in failing to consider Plaintiff's status as if she were a person "closely approaching advanced age" under 20 C.F.R. § 404.1563(d) because this Court finds that 191 days is not "within a few days to a few months of reaching an older age category" under 20 C.F.R. § 404.1563(b). Accordingly, Defendant's Motion for Summary Judgment is granted. Plaintiff's Motion for Summary Judgment is denied. The decision of the ALJ that Plaintiff was not entitled to disability insurance benefits is affirmed. Appropriate Orders follow.

*s/ Nora Barry Fisher*
Nora Barry Fischer
United States District Judge

Date: August 1, 2008

cc/ecf: All counsel of record.